UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2012 APR 25  PM 2:56
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) A12CV0370 SS |
| $36,690.00, MORE OR LESS, IN | ) |
| UNITED STATES CURRENCY, | ) |
| | ) |
| Respondent. | ) |

## VERIFIED COMPLAINT FOR FORFEITURE

Comes now Petitioner, United States of America, acting by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, pursuant to Rule G, Supplemental Rules of Federal Rules of Civil Procedure, and respectfully states as follows:

## I.
## NATURE OF THE ACTION

This action is brought by the United States seeking forfeiture to the United States of the property described below:

$36,690.00, more or less, in United States currency,

hereinafter the "Respondent Property."

## II.
## STATUTORY BASIS FOR FORFEITURE

This is a civil forfeiture action *in rem* brought against the Respondent Property for violations of 21 U.S.C. §§ 801, *et seq.*, and subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6), which state:

**18 U.S.C. § 981**
    **(a)(1)** The following property is subject to forfeiture to the United States:
        **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

**21 U.S.C. § 881**
    **(a) Subject property**
    The following shall be subject to forfeiture to the United States and no property right shall exist in them:
        **(6)** All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, . . . all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

### III.
### JURISDICTION AND VENUE

Under 28 U.S.C. § 1345, the Court has jurisdiction over an action commenced by the United States, and under 28 U.S.C. § 1355(a), jurisdiction over an action for forfeiture. This Court has *in rem* jurisdiction over the Respondent Property under 28 U.S.C. §§ 1355(b) and 1395. Venue is proper in this district, pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b), because the Respondent Property is found in this District.

The Respondent Property was seized in Austin, Texas on March 9, 2012 by the Austin Police Department and adopted for forfeiture by the Department of the Treasury, Internal Revenue Service on March 12, 2012. The Respondent Property has remained in the custody of the Department of the Treasury, Internal Revenue Service, within the jurisdiction of the United States District Court, Western District of Texas, Austin Division, and shall remain within the jurisdiction of the Court pending litigation of this case.

## IV.
## FACTS IN SUPPORT OF FORFEITURE

In early March 2012, officers of the Austin Police Department (APD) received information from a confidential informant (CI) that Ryan Amazeen, who resided in a duplex off Rutland Drive in Austin, Texas and drove a large white Chevrolet truck, was selling large quantities of high grade marijuana. The CI also told officers that he/she had purchased marijuana from Amazeen and seen large quantities of marijuana inside Amazeen's residence.

With the above information, officers began a narcotics investigation of Amazeen. Officers confirmed that he lived at 10400 Golden Meadow, #A, Austin, Texas. In addition, it was confirmed that Amazeen had two prior arrests for marijuana possession. Officers also had the CI confirm the identity of Amazeen using a photograph of him. APD officers then conducted surveillance on the Golden Meadow residence.

During their surveillance, officers saw a green 1998 Chevrolet truck frequently parked at the residence. The truck was registered to David Michael Rodriguez. Officers were able to identify Rodriguez as someone with three prior arrests for marijuana possession, with one arrest involving a marijuana grow operation. Officers also saw a white 2005 Chevrolet truck parked frequently at the residence. This truck was registered to Clementine Adams. Officers were able to identify Adams as someone with a prior arrest for the manufacture and delivery of a controlled substance. Officers saw numerous other vehicles and their occupants coming to the Golden Meadow residence, staying for short periods of time, and then leaving. Officers know from knowledge and experience that this type of activity is consistent with drug trafficking.

On March 8, 2012, officers saw Amazeen's white Chevrolet truck parked in the driveway of

the Golden Meadow residence. An officer also saw a green trash can on the public street in front of the residence and was aware that trash would be collected in the neighborhood on that day. The officer was able to collect three bags of abandoned trash from the trash can. The three bags of trash were taken by the officer to APD offices to search for any evidence of narcotics activity. Inside all three trash bags, officers found several plastic food saver bags that either had the odor of marijuana or contained marijuana residue. Based on knowledge and experience, law enforcement officers know that the large food saver bags are used by individuals to store, distribute, and sell marijuana in large quantities.

On March 9, 2012, officers continued their surveillance of the Golden Meadow residence. Officers walked up to the front door of the residence, and based on knowledge and experience, clearly detected the odor of burnt marijuana emitting from inside the residence. The front door also had a "Beware of Dog" sign, which confirmed information provided by the CI that Amazeen owned a pit bull dog to help prevent him from being robbed of his marijuana.

On March 9, 2012, officers returned to the Golden Meadow residence to execute a "no knock" search warrant. Pursuant to the search warrant, officers opened the front door without knocking or announcing themselves. An unknown female occupant, later confirmed to be Clementine Adams, a target of the investigation, was on the living room couch. A male occupant, later confirmed to be Ryan Amazeen, another target of the investigation, was found in the hallway near the living room.

Officers advised Amazeen and Adams of their rights. Amazeen was asked if he had any marijuana inside the residence, if the marijuana belonged to him, and if he smoked marijuana. He replied yes to all of these questions. Officers asked Adams about the money found in the residence

and its source. Adams stated that she did not have any money as it all belonged to Amazeen. She had no idea how much money was in Amazeen's possession, where it was located, or how Amazeen obtained the money. When questioned, Amazeen admitted that the money in the residence belonged to him and that it was derived from selling marijuana. Amazeen further admitted that he had $5,000.00 located in a kitchen drawer. He told officers that he had a total of $6,000.00 inside the residence, which proved to be untrue as detailed below.

During the search of the residence, officers found United States currency in various locations in the living room, including approximately $276.00 inside a wallet on the TV table, approximately $3.00 in a green backpack located on the floor, approximately $300.00 on top of an end table, approximately $1,200.00 in the top drawer of an end table, and approximately $29,880.00 under the bottom drawer of a second end table. When asked about the $29,880.00, Amazeen told officers that he knew the money had been hidden under the drawer and admitted that he had hoped officers would not find the money.

As part of the continued search of the living room, a jar containing approximately 3.3 grams of marijuana was found on the living room floor. Marijuana weighing approximately .7 grams was also found inside the previously found green backpack. Officers also found a Glock .40 caliber pistol on an end table in the living room, which was within arms reach of Adams when she was initially discovered on the living room couch. Drug paraphernalia was also found in the living room, including a "volcano" vaporizer used to ingest marijuana and a grinder on a side table. On the floor, a glass bong and grinder were found. In a drawer of the second end table, assorted marijuana paraphernalia, including pipes and a grinder, were found. Numerous other glass bongs were located throughout the residence, including in two different closets and on the fireplace mantle.

Inside a kitchen drawer, officers found two digital scales containing marijuana residue, along with three (3) sandwich size baggies containing marijuana. The baggies weighed approximately 63 grams, 21 grams, and 26 grams. Officers then found three large bags of marijuana weighing approximately 226 grams, 225 grams, and 401 grams, with one located under the kitchen sink and the others inside two different kitchen cabinets. The plastic bags containing marijuana were similar to the ones found in the three abandoned trash bags searched by officers. In total, officers seized 2.1 pounds of marijuana, a distributable amount. In one kitchen drawer, officers found approximately $5,000.00 in United States currency. Officers also found, in the kitchen, a vacuum sealer with marijuana residue on it and some vacuum seal type bags with a strong odor of marijuana. A multiple number of grinders were found on a shelf in a kitchen cabinet.

Officers also found approximately $22.00 in United States currency on top of a dresser in Amazeen's bedroom. In a second bedroom, officers saw what appeared to be dead marijuana plants and material. Officers also searched Adams's white Chevrolet truck parked at the residence. Inside the truck, officers located a small baggie of marijuana weighing approximately 1 gram and approximately $69.00 in United States currency. A glass marijuana pipe was also found inside the truck. In total, officers seized $36,690.00, more or less, in United States currency, the Respondent Property, from the search of the residence and vehicle.

While officers were searching the residence, a male individual knocked on the front door. An officer noticed the strong odor of marijuana coming from the individual's person. This person admitted to the officer that he had a small portion of marijuana on his person. The officer found a plastic bag containing a small amount of marijuana in the individual's left jacket chest pocket. In addition, this individual admitted that he had arrived at the residence to purchase marijuana from

Amazeen.

During subsequent questioning by officers at the residence, Amazeen admitted that he sold marijuana and bought several pounds of marijuana at a time from an individual in Austin, Texas. Amazeen would give Adams the money to purchase the marijuana and she would get the marijuana. The cell phones of Amazeen and Adams both contained drug related text messages.

During separate questioning, Adams denied any involvement with the marijuana, but she later changed her story when confronted with the text messages and statements of Amazeen. She admitted to involvement in marijuana being sold from the Golden Meadow residence. When questioned together, Amazeen and Adams agreed that Amazeen had purchased, about a week prior, the marijuana found in the house on March 9, 2012.

Amazeen's criminal history records reveal arrests for possession of marijuana in 2002 and 2006. Amazeen was convicted of possession of drug paraphernalia in 2007. A review of Amazeen's employment history shows no wages or employers. Amazeen admitted, while being interviewed by officers, that he did not have a job and had received his last paycheck about six months ago.

Adams's criminal history records show that charges were filed against her in 2011 for the manufacture and delivery of a controlled substance. A check of Adams's employment history showed total wages of $4,039.65 through the fourth quarter of 2010 and first quarter of 2011, but nothing after the first quarter of 2011. The minimal wages earned by Amazeen and Adams would not account for the accumulation of the United States currency found at the residence.

Based on the above facts and circumstances, the Respondent Property is subject to forfeiture to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6), as the Respondent Property constitutes proceeds furnished or intended to be furnished in exchange

for a controlled substance and constitutes proceeds traceable to a violation of a specified unlawful activity in knowing violation of 21 U.S.C. §§ 801, *et seq.*

## V.
## PRAYER

WHEREFORE, Petitioner, United States of America, prays that due process issue to enforce the forfeiture of the Respondent Property, that due notice, pursuant to Rule G(4), be given to all interested parties to appear and show cause why forfeiture should not be decreed,[1] that a warrant for an arrest *in rem* be ordered, that the Respondent Property be forfeited to the United States of America, that the Respondent Property be disposed of in accordance with the law, and for any such further relief this Honorable Court deems just and proper.

Respectfully submitted,

ROBERT PITMAN
United States Attorney

By: *[signature]*
Jennifer S. Freel
Assistant United States Attorney
816 Congress Avenue, Suite 1000
Austin, Texas 78701
Tel: (512) 916-5858
Fax: (512) 916-5855
Texas State Bar No. 24051327

---

[1] Appendix A, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Respondent Property.

## VERIFICATION

Special Agent Elizabeth Chapman declares and says that:

1. I am a Special Agent with the Department of the Treasury, Internal Revenue Service, assigned to the Austin Division Office, and am the investigator responsible for the accuracy of the information provided in this litigation.

2. I have read the above Verified Complaint for Forfeiture and know the contents thereof; the information contained in the Verified Complaint for Forfeiture has been furnished by official government sources; and based upon information and belief, the allegations contained in the Verified Complaint for Forfeiture are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 25th day of April, 2012.

Elizabeth Chapman, Special Agent
Department of the Treasury
Internal Revenue Service, CID